UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| TIFFANY N. ROBERSON, Individually, and on behalf of herself and all other similarly situated current and former employees, | Plaintiff |
| v. | Civil Action No. 3:19-cv-628-RGJ |
| TEXAS ROADHOUSE MANAGEMENT CORP. | Defendant |

\* \* \* \* \*

## **MEMORANDUM OPINION & ORDER**

Plaintiff Tiffany Roberson ("Roberson") presents three claims, on behalf of herself and all other similarly situated current and former employees, under the Fair Labor Standards Act ("FLSA") against Defendant Texas Roadhouse Management Corp. ("TXRH"). [DE 1]. TXRH moves to dismiss Count III of Roberson's Complaint as a matter of law. [DE 53] ("Motion"). Roberson responded, [DE 54], and TXRH replied. [DE 58]. This matter is ripe. For the reasons below, the Court **DENIES** TXRH's Motion to Dismiss [DE 53].

## **BACKGROUND**[1]

TXRH employed Roberson and those similarly situated to her and paid them as "tipped employees" under the FLSA tip credit provisions. [DE 1 at 3-4]; 29 U.S.C. § 203(m)(2). Plaintiff alleges that while claiming the applicability of the tip credit provisions, TXRH "has had a common plan, policy and practice of compensating Plaintiff and those similarly situated under a tip-credit compensation plan, consisting of compensating tipped employees with only a sub-minimum wage

---

[1] The Court accepts facts in the Complaint as true for the present Motion. [DE 1]. When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).

1

hourly rate of pay" and supplementing this pay with the tips earned by employees during their shifts. [DE 1 at 4]. Roberson alleges that TXRH has required "Plaintiff and those similarly situated to perform unrelated (dual occupation), non-tip producing tasks while clocked-in to Defendant's timekeeping system as tipped employees at a sub-minimum 'tip credit' wage as well as to perform non-tip producing preparation and maintenance 'side work' of more than 20% of their work time while only receiving a sub-minimum wage rate of pay." [DE 1 at 5-6].

Roberson claims that TXRH "(a) failed to provide [Roberson and hourly-paid tipped employees] with FLSA tip credit notice; (b) denied them minimum wages for performing duties completely unrelated to the tipped occupation; and (c) denied them overtime for performing work duties . . . related to their tipped occupation, yet themselves non-tip producing, in excess of twenty (20) percent of their work time." [DE 54 at 428].

Only Roberson's third claim ("Count III") is at issue in this motion. Under Count III, Roberson asserts that she and those similarly situated are "entitled to compensation for unpaid minimum wages at an hourly rate required by the FLSA for all time spent performing related, non-tip producing job duties in excess of twenty (20) percent of their work time." [DE 1 at 14-15]. Such related, non-tip producing duties include "refilling sugar caddies, refilling salt and pepper shakers, filling ice bins, refilling condiments, cleaning chairs, tables, booths, restaurant artifacts and décor, lights, blinds, windows, as well as . . . vacuuming and/or sweeping dining areas, checking dishes, and napkins." [DE 1 at 7].

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. Of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

## DISCUSSION

TXRH moves to dismiss Count III – Plaintiff's "80/20" theory of minimum wage liability - pursuant to Federal Rule of Civil Procedure 12(b)(6) as a matter of law. [DE 53]. TXRH argues that "[t]here is <u>nothing</u> in the FLSA itself or in the Department of Labor's ("DOL") regulations that limits the amount of time a tipped employee may spend on any particular activity within a 'tipped occupation,' nor has there ever been." [DE 53 at 244]. As a result, TXRH argues that even

assuming Roberson's allegations in Count III to be true, "she has not alleged conduct that violates the FLSA." [*Id.* at 245].

TXRH's Motion questions whether FLSA imposes any temporal limitation on the amount of related, untipped work that an employee may perform during their workweek while still being considered a "tipped employee." [DE 53 at 247; DE 54 at 435]. TXRH asserts that "the only basis for Plaintiff's "80/20" theory of minimum wage liability is a now-rescinded statement which previously appeared in the DOL's Field Operations Handbook" and "has recently been unambiguously rejected by the DOL." [DE 53 at 244-45]. Additionally, TXRH asserts that "the DOL recently issued a Notice of Proposed Rulemaking to formally revise its regulations to expressly confirm that there is no temporal limit on the time a tipped employee may spend performing related non-tipped duties for which the tip credit can be taken. The Court must therefore analyze the legislative and regulatory history and determine whether DOL's regulation and interpretations are entitled to *Chevron* deference.

### 1. Legislative and Regulatory History.

#### a. *The Statute*.

In 1938, Congress enacted the FLSA to "safeguard[ ] workers from poverty by preventing employers from paying substandard wages in order to compete with one another on the market." *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 615 (9th Cir. 2018) (en banc). In occupations that often garner payment in the form of tips, "[t]he FLSA permits employers to take a tip credit . . . . [which] offsets an employer's obligation to pay the hourly minimum wage" to employees, thus allowing employers to pay a sub-minimum wage out-of-pocket when supplementing it with the tips an employee earns. *Id.* Under the FLSA, an employee is considered a tipped employee "when, in the occupation in which he is engaged, the amounts he receives as tips customarily and regularly

total 'more than $30 a month.'" 29 C.F.R. § 531.56(a). In certain situations, "an employee may be engaged in two occupations for the same employer but may only qualify as a 'tipped employee' in one of those occupations." *Belt v. P.F. Chang's China Bistro Inc.*, 401 F. Supp. 3d 512, 521 (E.D. Penn. 2019) (citing 29 C.F.R. § 531.56(e)).

      b. *The Regulation.*

To address such situations, the Department of Labor ("DOL") promulgated the "dual jobs regulation," which provides that a tipped employee:

> employed in a dual job, as for example, . . . a maintenance man in a hotel [that] also serves as a waiter[,] . . . is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.

29 C.F.R. § 531.56(e). The regulation distinguishes this employee engaged in dual jobs from:

> a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses[,] . . . [or a] counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

*Id.* Thus, pursuant to the dual jobs regulation, "an employer can take a tip credit (and need not pay minimum wage) for an employee who performs 'related' but non-tipped duties provided that the employee performs them only 'occasionally' or 'part of [the] time.'" *Berger v. Perry's Steakhouse of Ill.*, 430 F. Supp. 3d 397, 410 (N.D. Ill. 2019) (citing *Shaefer v. Walker Bros. Enterprises, Inc.*, 829 F.3d 551, 554 (7th Cir. 2016)).

      c. *The DOL's Interpretation of the Dual Jobs Regulation Under the 1988 Handbook.*

Because "the dual jobs regulation does not explain" the terms "occasionally" or "part of the time," the DOL sought to clarify the regulation in its 1988 Field Operation Handbook ("1988 Handbook"). *Id.* The 1988 Handbook provided a temporal measurement to interpret the dual jobs

5

regulation: it stated that "where the facts indicate that tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related [non-tip producing] duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance." *Belt*, 401 F. Supp. 3d at 522 (quoting U.S. Dep't of Labor, Field Operations Handbook, § 30d00(f)(1)-(4) (rev. Dec. 15, 2016)) (quotations omitted). This provision in the 1988 Handbook became known as the "20% Rule" or the "80/20 Rule," and it was generally afforded deference by the courts while it remained in effect. *Sicklesmith v. Hershey Entm't & Resorts Co.*, 440 F. Supp. 3d 391, 397 (M.D. Penn. 2020) (quoting *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 879 (8th Cir. 2011); *Barnhart v. Chesapeake Bay Seafood House Assocs., LLC.*, 2017 U.S. Dist. LEXIS 48660 at *6 (D. Md. 2017)). Additionally, in controversies requiring interpretation of the dual jobs regulation, "the DOL . . . adopted the 80/20 Rule in *amicus* briefs to the Eighth, Ninth, and Tenth Circuit Courts of Appeals." *Belt*, 401 F. Supp. 3d at 522 (citations omitted).

> d. *The DOL's Interpretation of the Dual Jobs Regulation in the 2018 Opinion Letter, Field Assistance Bulletin, and Current Handbook*

In November 2018, the DOL sought to supersede the 20% Rule through an Opinion Letter issued by the DOL's Wage and Hour Division. *Id.* at 523 (citing U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018-27 (Nov. 8, 2018)) ("2018 Letter"). The 2018 Letter "purport[ed] to abolish the limitation on 'the amount of duties related to [a] tip-producing occupation that may be performed' so long as such related duties were performed 'contemporaneously' or within 'a reasonable time' before or after 'direct-service duties.'" *Berger*, 430 F. Supp. 3d at 411 (quoting the 2018 Letter). "By its terms, the DOL Opinion Letter superseded the statements to the contrary in the 1988 Handbook." *Id.* Soon after, the DOL issued a Field Assistance Bulletin reaffirming its new position. *Id.* Finally, the Wage and Hour Division

6

issued a revised edition of the Handbook ("Current Handbook") on February 15, 2019, which explicitly interprets the dual jobs regulation to "permit[ ] the employer to take a tip credit for *any time* the employee spends in duties related to the tipped occupation, even though such duties are not themselves directed toward producing tips." U.S. Dep't of Labor, Field Operations Handbook, § 30d00(f)(2) (rev. Feb. 15, 2019) (emphasis added).[2]

### 2. The Dual Jobs Regulation Warrants *Chevron* Deference.

"When Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *United States v. Mead Corp.*, 533 U.S. 218 at 227 (2001) (quoting *Chevron, U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984). This binding effect is known as *Chevron* deference. Here, "it is beyond question that the DOL promulgated the dual jobs regulation, 29 C.F.R. § 531.56, in the exercise of its congressionally delegated authority." *Marsh*, 905 F.3d at 621. In 1966, Congress amended the FLSA with its first definition for the term "tipped employee," along with a delegation of authority to "the Secretary of Labor 'to promulgate necessary rules, regulations, or orders with regard to the amendments made by this Act.'" *Id.* (quoting Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, § 101). In response, the DOL issued a notice of proposed rulemaking containing updates the DOL planned to make for the classification of tipped employees. *Id.* The dual jobs regulation was not in the notice of proposed rulemaking, but rather was enacted after the comment period closed as part of the finalized regulations. *Id.* Congress explicitly invited further regulation as to its new

---

[2] In October 2019, the DOL issued a Notice of Proposed Rulemaking reiterating its new position on the FLSA's tip credit provisions; the 60-day comment period expired in December 2019 and, as of this Opinion, no regulation has been announced or implemented. [DE 53 at 256]. The Court therefore proceeds under the current framework governing the FLSA tip credit provisions.

definition of the term "tipped employee," and the DOL enacted the dual jobs regulation in direct response to Congress's invitation. Thus, the dual jobs regulation is entitled to *Chevron* deference.

The dual jobs regulation was not in the DOL's notice of proposed rulemaking, but was enacted in response to the insight the DOL gained during the rulemaking process. *Id.* Consequently, TXRH asserts that "the dual job regulation, 29 C.F.R. § 531.56(e) – is not subject to *Chevron* deference because it was . . . never subject to notice or comment prior to its enactment." [DE 58 at 453]. The Sixth Circuit has found that when a party challenges an agency rule because it was enacted "without following all requirements of notice-and-comment rulemaking," the Administrative Procedure Act's six-year statute of limitations applies to the challenge. *Herr v. United States Forest Serv.*, 803 F.3d 809, 820 (6th Cir. 2015). "The clock for the injured party begins to tick the moment the agency took its final action because the agency's lack of notice-and-comment rulemaking already legally injured the party." *Id.* The dual jobs regulation was enacted in 1967, *see* 32 Fed. Reg. 13,575 (Sept. 28, 1976), and as such, "as a matter of law, . . . procedural challenges to the regulation here are indisputably untimely and beyond our scope of review." *Marsh*, 905 F.3d at 621. The Court will afford the dual jobs regulation deference under *Chevron*.

### 3. The Dual Jobs Regulation is Ambiguous.

In determining the application and interpretation of the regulation, the Court must first determine whether "the regulation is genuinely ambiguous." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). In making such a determination, "a court must exhaust all the 'traditional tools' of construction." *Id.* (citing *Chevron*, 467 U.S. 837, 843, n.9).

The dual jobs regulation explicitly differentiates between "a maintenance man in a hotel [who] also serves as a waiter" and "a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses."

8

29 C.F.R. § 531.56(e). As the Eighth and Ninth Circuits[3] have recognized, "although the [dual jobs] regulation establishes that a server who spends 'part of her time' cleaning tables and 'occasionally' washing dishes is not a dual jobs employee, . . . the regulation does not define either ambiguous, temporal term." *Marsh*, 905 F.3d at 624 (citing *Fast*, 638 F.3d at 877). In effect, "the regulation is ambiguous with regards to *how much* time an employee must spend on untipped work before there is a shift from 'occasionally' spending 'part of her time' on non-tip generating work to being fully engaged in dual jobs." *Sicklesmith*, 440 F. Supp. 3d at 401. Because the regulation "defines only the two extremes of the 'dual job' spectrum" but does not address the "middle ground between these illustrations," the regulation ambiguously "leaves open the method by which [courts] should decide when an employee is officially employed in two jobs." *Id.* Finding the dual jobs regulation to be ambiguous, the Court will next discuss whether deference to the DOL's interpretations is appropriate.

### 4. The DOL's 2018 Letter and Current Handbook Are Not Entitled to *Auer* Deference.

When a regulation is ambiguous, courts must defer to an agency's interpretation of the regulation when such deference is warranted under *Auer v. Robbins*. 519 U.S. 452 (1997). The Supreme Court has outlined "some especially important" (but not exhaustive) "markers for identifying when *Auer* deference is and is not appropriate." *Kisor*, 139 S. Ct. at 2416. To warrant *Auer* deference, an agency's regulatory interpretation must be "one actually made by the agency" or reflect the agency's official position, must "in some way implicate [the agency's] substantive expertise," and finally, "must reflect 'fair and considered judgment.'" *Id.* (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) ("*Kisor* considerations"). As to the last consideration, "a court may not defer to a new interpretation . . . that creates 'unfair surprise' to

---

[3] The Sixth Circuit has not yet decided whether the dual jobs regulation is ambiguous.

9

regulated parties." *Id.* (citing *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007)). Therefore, *Auer* deference is "only rarely given . . . to an agency construction 'conflict[ing] with a prior' one." *Id.* (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994). Stated another way, under the third *Kisor* consideration, "a court need not give an agency interpretation *Auer* deference when it amounts to an about-face on a previous, longstanding position, creating 'unfair surprise.'" *Berger*, 430 F. Supp. 3d 397, 411 (quoting *Christopher*, 567 U.S. at 156).

The final *Kisor* consideration is determinative in this case. The 1988 Handbook (containing the 20% Rule) was in effect for three decades and was reaffirmed by the DOL in amicus briefs as recently as 2016.[4] *Belt*, 401 F. Supp. 3d at 522. As a result, "without warning, the DOL's new interpretation directly contradicts the 80/20 rule adopted over 30 years ago, causing unfair surprise." *Berger*, 430 F. Supp. 3d at 411. Further, the DOL's new interpretation in its 2018 Letter and Current Handbook "also contradicts the dual jobs regulation, which, as noted, describes 'related duties' as work performed 'occasionally' and 'part of [the] time,' 29 C.F.R. § 531.56(e), thus demonstrating an intent to impose *some* limitation on the amount of time an employer can take advantage of a tip credit when an employee performs such duties." *Berger*, 430 F. Supp. 3d at 411-12 (emphasis original). Finally, TXRH concedes that the DOL's current interpretations are "not entitled to *Auer* deference." [DE 58 at 452]. The Court finds that the 2018 Letter and Current Handbook are not entitled to *Auer* deference because they substantially deviate from the DOL's previous, long-standing interpretation and thus create unfair surprise.

---

[4] The Court is not giving deference to the 1988 Handbook, but is instead reviewing the historical context around the DOL's current interpretations.

### 5. The DOL's 2018 Letter and Current Handbook Are Not Entitled to *Skidmore* Deference.

When *Auer* deference is inappropriate, an agency's interpretation of a regulation still may be afforded *Skidmore* deference "to the extent is has the 'power to persuade.'" *Kisor*, 139 S. Ct. at 2414 (citing *Christopher*, 567 U.S. at 159; *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). *Skidmore* deference "depend[s] upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* As discussed within the *Auer* framework, the 2018 Letter and Current Handbook "represent[ ] a stark shift in DOL policy," *Sicklesmith*, 440 F. Supp. 3d at 404, and are therefore inconsistent with the DOL's earlier pronouncements. As a result, the 2018 Letter and Current Handbook lack the power to persuade, and "we join with our sister district courts and will decline to afford *Skidmore* deference." *Id.* (citing *Belt*, 401 F. Supp. 3d at 535; *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Esry v. P.F. Chang's China Bistro, Inc.*, 373 F. Supp. 3d 1205, 1211 (E.D. Ark. 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 986 (W.D. Mo. 2019)).

The Court found only a single relevant case affording the new interpretations deference under *Auer* or *Skidmore*. *See Rafferty v. Denny's Inc.*, 2020 U.S. Dist. LEXIS 187432 at *14 (S.D. Fla. Sep. 4, 2020).[5] In contrast, there are several cases decided since the promulgation, including another case within the Sixth Circuit from the Northern District of Ohio, of the new interpretations

---

[5] TXRH cites two other cases, but each contains distinguishing characteristics that prevent their application here. *See Shaffer v. Perry's Rests. Ltd.*, 2019 U.S. Dist. LEXIS 82079, at *13 (W.D. Tex. Apr. 3, 2019) (magistrate judge's report and recommendation that was adopted because neither party objected to the report and recommendation. *See* 2019 U.S. Dist. LEXIS 82081); *Matusky v. Avalon Holdings Corp.*, 379 F. Supp. 3d 657 (N.D. Ohio 2019) (acknowledging that the DOL's new interpretations are inconsistent with the plain language of the FLSA, but ultimately granting summary judgment to the defendants specifically because the duties complained of in the case were, in fact, tip-producing duties based on the nature of a banquet setting. The court repeatedly distinguished the banquet setting from that of a typical restaurant).

that refused to afford any deference.[6] This Court joins the majority of other district courts in refusing to grant deference to the 2018 Letter or Current Handbook.

### 6. Interpreting the Dual Jobs Regulation.

Having found that the 2018 Letter and Current Handbook are not entitled to deference, the "court must interpret the Dual Jobs regulation on its own to determine if, as alleged, the FLSA imposes a twenty percent limit on the amount of untipped related work an employee may perform and still be classified as a tipped employee for the entirety of the hours worked." *Belt*, 401 F. Supp. 3d at 535. Roberson argues that "[t]here must be some temporal limitation placed on the amount of non-tip producing work and [sic] employee can perform while paid pursuant to a tip credit," [DE 54 at 435], and TXRH concedes that it is "undoubtedly true" that "there must be ***some*** temporal limit on the amount of time spent on non-tipped work based on the dual jobs regulation." [DE 58 at 456] (emphasis original). TXRH makes this concession, however, while arguing that the only non-tipped work Roberson should receive minimum wage for is *unrelated* work. [*Id.*].

On one end of the dual jobs spectrum, there is a hotel maintenance man and waiter engaged in two separate *and unrelated* jobs, and on the other end, there is a waitress that occasionally performs *related* work that does not in itself yield tips. 29 C.F.R. § 531.56(e). Based on the structure set forth in the dual jobs regulation, then, it is easy to imagine an employee somewhere in the middle that performs *related* work at a frequency greater than *occasionally* or *part of the*

---

[6] *See Kafka v. Melting Pot Rests.*, 2019 U.S. Dist. LEXIS 232407, at *9 (W.D. Mo. Apr. 30, 2019); *Sicklesmith*, 440 F. Supp. 3d at 402-04; *Cope*, 354 F. Supp. 3d at 986; *O'Neal v. Denn-Ohio, LLC*, 2020 U.S. Dist. LEXIS 5721 at *18-23 (N.D. Ohio Jan. 14, 2020); *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, 2020 U.S. Dist. LEXIS 83633, at *13 (E.D. Pa. May 12, 2020); *Berger*, 430 F. Supp. 3d at 412; *Rorie v. Wsp2*, 2020 U.S. Dist. LEXIS 166080, at *12 (E.D. Ark. Sep. 9, 2020); *Esry*, 373 F. Supp. 3d at 1210; *Belt*, 401 F. Supp. 3d at 532-34; *Williams v. Bob Evans Rests., LLC*, 2020 U.S. Dist. LEXIS 145852, at *33 (W.D. Pa. Aug 13, 2020).

*time*. For the reasons stated below, twenty percent is a reasonable threshold to measure this "middle ground."

The dual jobs regulation uses the terms "occasionally" and "part of the time" to distinguish exclusively tipped employees from employees engaging in dual jobs. In the Sixth Circuit, "[w]hen interpreting the words of a statute, contemporaneous dictionaries are the best place to start," and "[a]nother tool of interpretation is the context provided by the rest of the statute," which "look[s] to how the word is used in other parts of the statute." *Keen v. Helson*, 930 F.3d 799 at 803-04 (6th Cir. 2019). Both interpretation tools are instructive here.

The term "occasionally" is defined as "on occasion; now and then" or "sometimes but not often." *Occasionally*, MERRIAM-WEBSTER (last updated Nov. 3, 2020); *Occasionally*, OXFORD ADVANCED AMERICAN DICTIONARY (10th ed. 2020). Using the ordinary meaning of "occasionally," then, the dual jobs regulation allows the tip credit for employees that perform non-tipped duties with some regularity, so long as they are not performed often or frequently. The plain meaning of "occasionally" and the other temporal terms used in the dual jobs regulation (*i.e.*, "part of the time" or "takes a turn") imply that an employee's performance of such non-tip producing duties must not constitute a substantial portion of their work. Twenty percent is a reasonable threshold to distinguish between duties performed on occasion and duties performed at a higher frequency.

The reasonability of a twenty percent threshold is bolstered by the dual jobs regulation's context within the FLSA, and the DOL's interpretation of other portions of the FLSA. "The DOL consistently uses 'a 20 percent threshold to delineate the line between substantial and nonsubstantial work in various contexts within the FLSA.'" *Belt*, 401 F. Supp. 3d at 536 (citing

13

*Fast*, 638 F.3d at 881).[7] Finally, "the DOL used a twenty percent limit in *this* context for thirty years, and this was found to be reasonable and sanctified by numerous federal courts over the past decade." *Id.* at 537 (citing *Marsh*, 905 F.3d at 630; *Fast*, 638 F.3d at 881; *Foster v. New Apple, Inc.*, 2017 U.S. Dist. LEXIS 128412, at *7 (D.S.C. Aug. 8, 2017); *Barnhart*, 2017 U.S. Dist. LEXIS 48660 at *5; *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F. Supp. 3d 729, 733 n.3 (D.S.C. 2015)). Though the twenty percent rule from the 1988 Handbook is no longer in effect, twenty percent has repeatedly been approved as a reasonable interpretation of the temporal limit in the dual jobs regulation over the past few decades. Such approval supports the Court's interpretation of twenty percent as a reasonable threshold.

To be sure, "the Dual Jobs regulation could reasonably be interpreted to impose temporal limits other than twenty percent." *Belt*, 401 F. Supp. 3d at 537. The Court recognizes the possibility that there could be alternative reasonable interpretations, yet finds twenty percent to be reasonable given the ordinary meaning of the dual jobs regulation, the FLSA's consistent application of a twenty percent threshold in other contexts, and decades of federal district courts (and the DOL) interpreting such a threshold to be reasonable in this context.[8]

---

[7] *See* 29 C.F.R. § 783.37 (a seaman that also performs nonseaman's work may still be considered a seaman if he only spends an unsubstantial amount of time engaged in nonseaman's duties; the line between substantial and not substantial is drawn at 20 percent of the employee's time working); 29 C.F.R. § 553.212 (law enforcement employees may engage in nonexempt work and still be categorized as engaging in law enforcement activities so long as the nonexempt work constitutes less than 20 percent of the hours worked); 29 C.F.R. § 552.6 (employees that provide companionship services may also provide care services, so long as the provision of care does not exceed 20 percent of the employee's hours worked); 29 C.F.R. § 786.100 (switchboard operators may engage in nonexempt work so long as the amount of nonexempt work remains not substantial, which is measured at a 20 percent threshold); 29 C.F.R. § 786.150 (rail carriers may perform nonexempt work so long as it is not substantial, which is measured at a 20 percent threshold); 29 C.F.R. § 786.200 (taxicab operators may perform nonexempt work so long as it is not substantial, which is measured at a 20 percent threshold).

[8] *See, e.g.*, *Marsh*, 905 F.3d 610; *Fast*, 638 F.3d 872; *Flood v. Carlson Rests., Inc.*, 94 F. Supp. 3d 572, 582-83 (S.D.N.Y 2015); *McLamb v. High 5 Hospitality*, 197 F.l Supp. 3d 656 at 662-63 (D. Del. 2016); *Irvine v. Destination Wild Dunes Mgmt.*, 106 F. Supp. 3d 729, 734 (D. S.C. 2015); *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1033 (N.D. Ill. 2012); *Barnhart*, 2017 U.S. Dist. LEXIS 48660 at *17; *McLamb v. High 5 Hosp.*, 197 F. Supp. 3d 656, 663 (D. Del. 2016); *Goodson v. OS Rest. Servs., LLC*, 2017 U.S.

### 7. Workability of a Twenty Percent Threshold.

TXRH cautions that the imposition of a twenty percent threshold in this context would require "the employer and the Court . . . to determine whether the amount of time spent on the non-tip-producing activity exceeded 20% of the total hours worked for every week of their employment during the applicable limitations period in order to determine liability." [DE 53 at 261]. In response, Roberson contends that "[t]he reality is 'employers are already directed to keep various payroll records for all tipped employees . . . Because employers must already have a mechanism for measuring time tipped employees spend in non-tip-producing occupations, any further administrative burden imposed by the twenty percent rule is likely minimal.'" [DE 54 at 442 (quoting *Spencer*, 2018 U.S. Dist. LEXIS 129522 at *20)].

While the Court understands TXRH's concern, a twenty percent threshold is workable. As noted, the DOL uses a twenty percent threshold in various other contexts within the FLSA, which establishes the feasibility of requiring employers to track an employee's time spent performing discrete tasks up to and in excess of twenty percent of their workload. Additionally, even in TXRH's view, "the DOL does 'not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, *so long as they are performed contemporaneously* with direct customer-service duties and all other requirements of the Act are met.'" [DE 53 at 254-55] (quoting *Pellon v. Bus Representation Int'l, Inc.*, 528 F. Supp. 2d 1306 (S.D. Fla. 2007) (emphasis added). This view supports the idea that it is feasible for an employer to determine when non-tip-producing tasks are performed in temporal relation to tip-producing ones. Thus, it remains reasonable for an employer to track how much time employees spend performing discrete duties.

---

Dist. LEXIS 71923, at *13 (M.D. Fla. May 9, 2017); *Harrison v. Rockne's Inc.*, 274 F. Supp. 3d 706, 713 (N.D. Ohio 2017).

Ultimately, "[t]he FLSA 'was designed to extend the frontiers of social progress by insuring to all our ablebodied working men and women a fair day's pay for a fair day's work,'" and such a principle "can only be guaranteed if employers' ability to take the tip credit is limited to when their employees are actually 'engaged in a tipped occupation.'" *Belt*, 401 F. Supp. 3d at 538 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). As a result, it is both workable and necessary for employers to remain aware of the time their employees spend engaging in tip-producing tasks versus non-tip-producing ones.

### 8. Plaintiff's Complaint States a Claim.

Given that the Court has interpreted the dual jobs regulation to contain a twenty percent threshold, Count III will survive if Roberson has set forth facts that, permit a reasonable inference that TXRH applied a tip credit, and thus paid a sub-minimum wage, to Roberson and others similarly situated for related, non-tip-producing duties in excess of twenty percent of their total working time.

An FLSA violation in this context is established where an employee engaged in a tipped occupation shows that (a) their time spent performing related but non-tipped duties exceeded twenty percent of their workweek, and (b) their employer compensated them at a sub-minimum wage rate of pay for the performance of such duties. In her Complaint, Roberson alleges that TXRH employees "perform non-tip producing preparation and maintenance 'side work' [constituting] more than 20% of their work time while only receiving a sub-minimum wage rate of pay." [DE 1, at 6]. Roberson states that she and "those similarly situated routinely have spent more than twenty percent (20%) of their regularly scheduled shifts performing" a number of duties that Roberson claims are themselves non-tip producing, yet nonetheless related to employees' tipped work. [*Id.* at 7]. This claim sufficiently alleges that TXRH has failed to compensate

16

employees at a minimum wage for related, non-tipped duties in excess of twenty percent of employees' total working time.

Presuming Roberson's factual allegations to be true and making all reasonable inferences in her favor, Roberson has sufficiently pleaded facts sufficient to state a claim.

## CONCLUSION

For the reasons above, and being otherwise sufficiently advised, the Court **ORDERS** that TXRH's Motion to Dismiss [DE 53] is **DENIED**. The Court will issue a separate Order for Meeting and Report pursuant to Fed. R. Civ. P. 16 and 26.

Rebecca Grady Jennings, District Judge
United States District Court

December 9, 2020